UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

PATRICK DERMESROPIAN, D.D.S.

Plaintiff

v.

DENTAL DREAMS, LLC; SAMEERA
HUSSAIN; FIELD OF DREAMS
DENTAL MANAGEMENT, LLC;
KHURRAM HUSSAIN; and
PETER STATHAKIS,

Defendants

**VERIFIED COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff, PATRICK DERMESROPIAN, D.D.S. ("Dr. Dermesropian"), by his attorneys, Ballon Stoll Bader & Nadler, P.C., complaining of the Defendants, alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of this Action:

   a.   Pursuant to **28 U.S.C. §1331**, since this Action arises under the laws of the United States, to wit, the provisions of 18 U.S.C. §1961, *et seq.*;

   b.   Pursuant to **28 U.S.C. §1332**, since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States;

   c.   Pursuant to 28 U.S.C. §1343, since the Plaintiff seeks redress on account of the deprivation of  his rights or privileges as a citizen of the United States; and

d.      Pursuant to 28 U.S.C. §1332, since the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000.00.

e.      Pursuant to **18 U.S.C. §§§1961, 1962, 1964(c)**, since Defendants engaged in a pattern of racketeering activities.

f.      Pursuant to **18 U.S.C. §1341,** since the Defendants have used the United States Postal Office in furtherance of their scheme to defraud the U.S. government and commit other fraudulent and illegal activities.

g.      Pursuant to **18 U.S.C.A. §1347**, since the Defendants have knowingly and willfully executed a scheme to defraud several health care benefit programs, whether public or private.

2.      Venue is proper in this district:

a.      Pursuant to 28 U.S.C. §1391 (a)(2) & (b)(2), since a substantial part of the events or omissions giving rise to the claim occurred in this District;

b.      Pursuant to 28 U.S.C. §1391 (a)(3), since one or more of the defendants is subject to jurisdiction in this District; and

c.      Pursuant to 28 U.S.C. §1391 (b)(3), since one or more of the defendants may be found in this District.

d.      This Court has supplemental jurisdiction over plaintiff's state statutory and common law claims pursuant to 28 U.S.C. §1367(a).

## PARTIES

3.      At all relevant times herein relevant, plaintiff Dr. Dermesropian was and still is a natural person licensed to practice dentistry in the States of Illinois, Massachusetts

and Connecticut and engaged in the practice of his profession as a general dentist.  Dr. Dermesropian resides at 77 Pheasant Hill Drive, West Hartford, Connecticut 06107.

4.      Defendant DENTAL DREAMS, LLC ("DDL"), was and is still a Massachusetts Limited Liability Company maintaining dental clinics and billing offices in various locations throughout the State of Massachusetts including a location at 555 State Street, Springfield, Massachusetts.

5.      DDL solicits dental patients within the States of Massachusetts and Connecticut, treats dental patients who reside in the States of Massachusetts and Connecticut, and employs dentists who reside in both States as well.

6.      DDL is part of a network of "Dental Dreams" entities (hereinafter: "the Dental Dreams Network") which, through one or more locally-licensed dentists at each of its locations, own and/or operate dental clinics and billing offices in multiple States, including Massachusetts, Connecticut, Texas and Illinois, and which has its headquarters in the business offices of defendant Field of Dreams Dental Management LLC, at 430 W. Erie, Suite 200, Chicago, Illinois 60610.

7.      Defendant FIELD OF DREAMS DENTAL MANAGEMENT, LLC ("DD Management") is an Illinois Limited Liability Company that provides administrative and business services for the entities in the Dental Dreams Network, and undertakes to implement and enforce certain avowed business and professional standards, policies, rules and procedures of the entities in the Dental Dreams Network.

8.      At all times relevant herein, defendant SAMEERA HUSSAIN ("Dr. Hussain") was and still is a licensed dentist residing at 802 Deer Trail Lane, Oak Brook, Illinois, and the principal officer and sole owner of record of both DDL and DD Management.

9.    At all times herein relevant, defendant KHURRAM HUSSAIN ("Mr. Hussain") was and still is the husband of Dr. Hussain and resides with Dr. Hussain at 802 Deer Trail Lane, Oak Brook, Illinois.

10.    Mr. Hussain is the Manager of, and a Member of, defendant DD Management, is actively engaged in the management of the Dental Dreams Network (including management of the Springfield office of defendant DDL) and, together with defendants David Wolle and Peter Stathakis, both identified below, exercises substantial dominion and control over the business and professional practices of the Dental Dreams Network.

11.    At all times relevant herein, defendant DAVID WOLLE ("Wolle") was and still is a natural person residing at 883 Fairview Rd., Highland Park, Illinois, is a Member of DD Management and is actively engaged in the management of the Dental Dreams Network (including management of the Springfield office of DDL) and, together with defendant Mr. Hussain, exercises substantial dominion and control over the business and professional practices of the Dental Dreams Network.

12.    At all times relevant herein, defendant PETER STATHAKIS ("Stathakis") was and still is a natural person residing at 1215 Wilbraham Road, Springfield, Massachusetts, is a Member of DD Management and is actively engaged in the management of the Dental Dreams Network (including management of the Springfield office of DDL) and, together with defendants Mr. Hussain and defendant Wolle, exercises substantial dominion and control over the business and professional practices of the Dental Dreams Network.

## NATURE OF ACTION

13.     This is an action by Plaintiff, Dr. Dermesropian against Defendants DDL, Dr. Hussain, DD Management, Mr. Hussain, Mr. Wolle and Mr. Stathakis for Retaliatory Discharge in Violation of 42 U.S.C. § 1981, Retaliation in Violation of Illinois statute, for breach of contract, for breach of contract –implied covenant-, for tortious interference in contractual relationships causing economic injury to Plaintiff, and against Defendants Dr. Hussain, Mr. Hussain, Mr. Wolle and Mr. Stathakis for racketeering in violation of 18 U.S.C. § 1964 (c).   Plaintiff seeks to recover compensatory and related damages, punitive damages and treble damages warranted by Defendants' wrongful conduct, together with the costs of this suit, interest and reasonable attorney's fees.

14.     In committing the wrongful and illegal conducts described in this action and obtaining the benefits therefrom, Dr. Hussain, Mr. Hussain, Mr. Wolle and Mr. Stathakis violated RICO laws.

15.     Plaintiff complained of Defendants' continuous, wrongful and illegal activities, and as a result of his complaints, Defendants wrongfully terminated Plaintiff's employment.

16. Plaintiff suffered injury that was proximately caused by Defendants' racketeering activities.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

17.     In or around June 2008, Dr. Dermesropian and DDL entered into an Independent Contractor Agreement (the "Employment Agreement") whereby, among other things, DDL engaged Dr. Dermesropian, commencing September 1, 2008, for the purpose of providing professional dental services to DDL's patients at DDL's Springfield,

Massachusetts clinic ("DDL's clinic").  Attached hereto as Exhibit A is an unsigned copy of

the Employment Agreement, the original of which the parties signed.

18.      Prior to September 1, 2008, Dr. Dermesropian had been engaged in the

practice of dentistry at another entity in the Dental Dreams Network, in the State of Illinois.

19.      The Employment Agreement provides, in pertinent part:

> 7. <u>Term</u>.  The initial term of this Agreement shall commence as
> of the Commencement Date and shall continue for a period of one (1)
> year thereafter (the "Initial Term") unless sooner terminated by DDL
> pursuant to section 8 below. ***Upon the expiration of the Initial Term,
> this Agreement shall automatically renew for successive terms of
> one (1) year each upon the same terms and conditions, unless
> either party provides the other with written notice of its intent not
> to renew at least one hundred twenty (120) days prior to the
> expiration of the then current term.***

> 8. <u>Termination</u>.  Either party may terminate this Agreement for
> any reason upon one hundred twenty (120) days prior written notice to
> the other party. This Agreement shall automatically terminate upon the
> occurrence of any of the following events:
> A. By written agreement of both parties.
> B. If Dentist has breached the terms of this Agreement.
> C. The suspension, revocation of, or failure to procure or
> maintain any and all of the licensing and certification requirements
> set forth by State, Federal or local laws and regulations governing
> the performance of dental services under this Agreement.
> D. In the event Dentist shall fail or refuse to diligently
> perform the provisions of this Agreement or the usual customary
> duties of a dentist.
> E. In the event Dentist violates the rules, regulations,
> policies or procedures of DDL.
> F. In the event Dentist's conduct, either personally or
> professionally, is such that DDL deems such conduct to be
> inconsistent with or detrimental to achieving the business and/or
> professional goals of DDL.
>                                 * * * * *
> 12. <u>Applicable Law</u>.  This Agreement shall be governed and
> construed according to the laws of the State of Illinois.

20.      Under the Employment Agreement, Dr. Dermesropian was entitled to

receive the <u>greater</u> of a $690.00 compensation for every 8 hours worked, or thirty

percent (30%) of Production directly resulting from dental services rendered by him. In addition, if Dr. Dermesropian worked at least 40 hours per week, he became entitled to reimbursement of a portion of his health and professional liability insurance premiums.

**Plaintiff Reports Misconduct to DDL and DD Management**

21.    Plaintiff repeats, reiterates and realleges each and every allegation as set forth above as though more fully set forth herein.

22.    Following the commencement of his employment in DDL's clinic, Dr. Dermesropian observed, experienced concern over, and began to report or complain to DDL and DD Management, a variety of palpably improper practices that he learned were being engaged in at DDL's clinic, including, but not limited to:

    a. interference in patient treatments by company business personnel who were not licensed dentists in order to increase revenue;

    b. subjecting patients to dental procedures that were not medically necessary or advisable, solely to increase revenue;

    c.    violation of patient privacy and confidentiality standards in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA");

    d. engaging in improper and false billing practices for reimbursements from Medicaid as well as private insurance carriers, including but not limited to "pre-billing" for dental prosthetics (*i.e.*, dentures, crowns and bridges)  prior to delivery thereof to the patients;

    e. providing unlawful access to and use of one dentist's Drug Enforcement Administration (DEA) registration number (Dr. Hussain's) to another dentist (Dr.

Koushan Azad) who had not yet received a DEA registration number and did not work in the same DDL location; and

f. violating Federal Occupational Safety & Health Administration ("OSHA") medical workplace standards and regulations, putting employees and patients of the clinic, and their families and others coming into contact with them, at risk of contracting infectious diseases.

23. In some instances, defendants Mr. Hussain, Wolle and Stathakis were among the persons either engaging in or condoning the above conduct, or both.

24. In addition, Dr. Dermesropian further experienced, or observed, Mr. Hussain, Wolle and Stathakis, with the knowledge, consent and approval of Dr. Hussain, engaging in the following additional behaviors and misconduct, in their management and operation of DDL's clinic:

a. using derogatory and disrespectful language while addressing the staff, including the dentists, both in and out of the presence of patients.

b. dictating the course of dental treatments for patients, although neither Mr. Hussain, nor Messrs. Wolle and Stathakis were licensed or educated as dentists;

c. denying computer access to dentists, notwithstanding the necessity of accessing diagnostic and treatment tools.

d. demanding work hours of the contract dentists beyond those contractually required;

e. threatening to discharge dentists for refusing to comply with Messrs. Hussain's, Wolle's or Stathakis' unlawful or improper instructions and directives.

25. In and between September, 2008 and October 7, 2008, Dr. Dermesropian reported the foregoing acts and practices to Dr. Hussain and to Management, including in reports made to Mr. Hussain, Wolle and Stathakis.

26. In fact, Dr. Dermesropian had previously reported an insurance fraud to

defendant Wolle and to Dr. Koushan Azad (a prior partner of DDL) by Dr. Tiberius Oancea ("Dr. Oancea") at the Illinois clinic, as follows.

**Insurance Fraud and Creating False Records**

27.     Plaintiff repeats, reiterates and realleges each and every allegation as set forth above as though more fully set forth herein.

28.     Dr. Dermesropian learned, and reported to defendant Wolle and to Dr. Koushan Azad, that Dr. Oancea was improperly postponing, from 2007 to 2008, the billing of completed dental procedures on a patient in order to maximize the reimbursements available from the patient's insurance.

29.     In 2007, Dr. Oancea had recorded certain procedures performed in the patient's chart and had submitted his work to be billed.  However, the billing department informed him that the newly-performed work to be billed would (in light of prior 2007 billings) exceed the amount covered in 2007, and that the clinic would not pay Dr. Oancea for work that the patient's insurance would not pay for further 2007 work.

30.     After Dr. Oancea was informed of the above by the clinic's billing department, Dr. Oancea ripped out one or more 2007 pages from the patient's chart and re-recorded the subject procedures as 2008 work, in order to bill out procedures done in 2007 as if they were performed in 2008.

31.     Dr. Dermesropian was joined by Natalie Secrest of the Illinois clinic's billing department in reporting Dr. Oancea's misconduct to Dr. Koushan Azad of DD Management.

32.     After Dr. Azad failed to do anything about Dr. Oancea's misconduct of fraudulent billing, Dr. Dermesropian further reported it to defendant Wolle, who then also did nothing about it.

33.    Natalie Secrest, however, was asked to keep quiet about such misconduct.

34.    In addition, Dr. Oancea was caught bribing or attempting to bribe the clinic's receptionist to assign the most desirable patients (those having private – rather than Medicaid -) insurance coverage to him, to additionally raise his income production and compensation.

35.    When Dr. Dermesropian reported this further misconduct by Dr. Oancea to defendant Wolle, Wolle dismissed the report and told Dr. Dermesropian to ignore the misconduct.

**Defendants' Culture of Insurance Fraud and Furnishing Services that were not Medically Necessary.**

36.    Plaintiff repeats, reiterates and realleges each and every allegation as set forth above as though more fully set forth herein.

37.    As noted in Paragraph 17, above, among the misconduct which Dr. Dermesropian had reported or complained about to DDL and DD Management was the practice, by company business personnel who were not licensed dentists, of interfering in patient treatments, and of the resultant subjecting of patients to dental procedures that were not medically necessary or advisable;

38.    When Dr. Dermesropian began his employment in DDL's clinic in Massachusetts in September, 2008, he was repeatedly urged to be more aggressive in his treatment plans in accordance with the practices set forth above.

39.    Dr. Dermesropian ignored the suggestions to improperly create more billable dental work as set forth above, but nonetheless succeeded, by virtue of his high-achieving work habits and professional acumen, in achieving exceptional production of work and income for DDL in his work from September 1, 2008 through October 7, 2008.

40.     When defendant Wolle reviewed Dr. Dermesropian's production at DDL, he apparently assumed that it was due to the improper practices he had recommended to Dr. Dermesropian, and told Dr. Dermesropian to reduce his production in order to not "attract attention" to DDL by the insurance providers which were the mainstay of its revenue stream.

**RICO violations**

41.     Plaintiff repeats, reiterates and realleges each and every allegation as set forth above as though more fully set forth herein.

42.     Defendants DD Management and DDL, individually and/or jointly constitute an enterprise as defined by 18 U.S.C. § 1961(4).

43.     Defendants Dr. Hussain, Mr. Hussain, Mr. Wolle and Mr. Stathakis are "persons employed by or associated with this Enterprise."

44.     In the alternative, all defendants are a group of individuals associated in fact although not a legal entity.

45.     The enterprise shared a common purpose of controlling its dentists and staff and to use them to illegally benefit itself, including committing wrongful activities of defrauding health care providers to maximize its profit.

46.     Members of the enterprise engaged in conduct which constituted a pattern of racketeering activity to support the goals and purposes of the enterprise.

47.     In general, the hierarchy of the enterprise mirrored the hierarchy of individual defendants' positions at DD Management.

48.     Each of the individual defendants initiated criminal acts of the enterprise.

49. Defendants' predicate acts and conduct, as set forth in this Complaint, amount to, and reveal the likelihood of, continuous criminal activity projecting into the future.

50. Defendants' criminal actions, by their nature, project into the future with a threat of repetition and thereby satisfy the "pattern" requirement of 18 U.S.C. § 1962(c).

51. The long and continuous history of predicate acts on the part of defendants, which was committed over a substantial period of time, is sufficient to demonstrate a close ended pattern of continuity sufficient to satisfy the "pattern" requirement of 18 U.S.C. § 1962(c).

52. The defendants, through their enterprise, engaged in interstate commerce.

53. The defendants, through the activities of their enterprise, affected interstate commerce.

54. All defendants benefited from the mutual enterprise. Each defendant is therefore jointly and severally liable for the actions of all other defendants.

55. Defendants engaged in racketeering activity by repeatedly violating 18 U.S.C. § 1341 by committing mail fraud.

56. In furtherance of their scheme to defraud health care insurances as more fully described in paragraphs 22 to 27, Defendants have used the United States Postal Office by mailing the fraudulent billing to the insurance /Medicaid companies, thereby committing mail fraud.

57. Moreover, Defendants have engaged in monetary transactions in property derived from specified unlawful activities in violation of 18 U.S.C. § 1957.

58. Specifically, defendants received funds directly from United States and various State agencies for reimbursement of medical expenses, and deposited those funds in their personal and/or corporate bank accounts, while misrepresenting to those agencies that the funds were being paid to Dr. Dermesropian.

59.   While defendants were being paid directly by those State and Federal Agencies, and only paying a portion of those payments to Dr. Dermesropian, and reporting those payments on Internal Revenue Service Form 1099's, they nevertheless billed those Agencies under the guise that the funds were in fact going entirely to Dr. Dermesropian.

60.   Defendants have conspired with each other in furtherance of their scheme by unlawfully failing to report the billed reimbursement requests as their own and misrepresenting it as income for Dr. Dermesropian.

61.   By their unlawful business activities in violation of 18 U.S.C. § 1957, Defendants maliciously and unlawfully injured Plaintiff, who recently received a notice form the IRS seeking additional taxes, interest thereon and substantial penalties on income that was fraudulently reported as made by Plaintiff.

62.   Defendants were fully aware of the wrongful conducts and that they would receive proceeds from these unlawful transactions in violation of Federal Laws, and their unlawful actions fall within the meaning of 18 U.S.C. § 1961 (1).

63.   Plaintiff's complaints stem from defendants' wrongful activities accomplished through violations of RICO laws.

64.   Each one of the defendants knew of the violations and unlawfully conspired to accomplish them in violation of 18 U.S.C. § 1962(d).

65.   Each Defendant engaged in a pattern of racketeering by engaging in two or more of the abovementioned racketeering acts within a 10 year period. Furthermore each defendant engaged in two or more acts that aided or abetted the other defendants' violations of RICO predicate acts.

66.   Defendants' actions, *inter alia,* caused plaintiff to a) be unlawfully terminated from his employment with defendants; and b) caused him, and continue to cause him to suffer other damages for which he is legally entitled to recover.

**Defendants' Illegal Billing.**

67.     Plaintiff repeats, reiterates and realleges each and every allegation as set forth above as though more fully set forth herein.

68.     Management, including Mr. Hussain, Wolle and Stathakis, with the knowledge, consent and approval of Dr. Hussain were, among other illegal practices, billing out crowns, bridges and dentures at the impression stage and NOT on delivery, as required by law.

69.     Dr. Dermesropian noticed DDL's misconduct when he received credit for dental work that was either not complete and/or not yet delivered to the patient.

70.     When Dr. Dermesropian questioned this practice, he was advised by management that such are the practices of DDL and that he was not to interfere with its billing practices.

71.     Defendants have knowingly and willfully perpetrated their scheme to defraud several health care benefit programs in violation of 18 U.S.C. § 1347.

72.     Defendants have all participated in that scheme and have continued to profit from their illegal and wrongful activities.

73.     Moreover, each instance of Defendants' submission of a fraudulent bill to a health care provider was committed through the use of the United States Postal Service.

74.     As such Defendants, who had full knowledge of the health care fraud, as they had all conspired in its furtherance, established a pattern of mail fraud in violation of  18 U.S.C. § 1341.

75.     Defendants were fully aware of the wrongful conduct and that they would receive proceeds from these unlawful transactions in violation of Federal Laws, and their unlawful actions fall within the meaning of 18 U.S.C. § 1961 (1).

76.     Defendants' actions constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961 (1).

**Violation of OSHA Regulations.**

77.     Plaintiff repeats, reiterates and realleges each and every allegation as set forth above as though more fully set forth herein.

78.     As stated in paragraph 22 above, defendants subjected their employees and families to the risk of contracting infectious diseases.

79.     It is the responsibility of defendants to guarantee their employees a clean, sterilized and sanitized workplace.

80.     However, with the full knowledge of defendants, several staff members had entered DDL's eating areas with infected laboratory coats and had disposed of them in the kitchen garbage cans, placing all other employees and their families at risk of contamination.

81.     Again, Dr. Dermesropian reported this violation to management, but nothing was done to correct it.

**Defendants' Wrongful Termination of Plaintiff's Employment**

82.     Plaintiff repeats, reiterates and realleges each and every allegation as set forth above as though more fully set forth herein.

83.     On October 7, 2008, as a direct consequence of Dr. Dermesropian's reports and complaints about misconduct at DDL, DDL purported to unilaterally

terminate Dr. Dermesropian's Employment Agreement, notwithstanding the absence of any notice to Dr. Dermesropian as required by the Employment Agreement's terms.

84.     Defendants violated anti-retaliation laws by discharging Dr. Dermesropian because he engaged in specified "protected" activities.

85.     Defendants' misconduct is in violation of State and Federal laws, rules, regulations and is a direct threat to public interest, including health/safety violations, and corruption.

### FIRST COUNT
### (Retaliation in Violation of 740 ILCS 174/1 *et seq.)*

86.     Plaintiff repeats and reiterates each and every allegation as set forth above as if fully set forth at length herein.

87.     Plaintiff was terminated for refusing to violate the law, rendering his termination a retaliatory discharge.

88.     As a direct, foreseeable, and proximate result of defendants' wrongful termination of Plaintiff, Plaintiff has lost, and will continue to lose wages and benefits that he would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby in an amount in excess of $700,000.00, the complete amount of which will be proved at trial, plus attorney's fees, costs and disbursements of this action.

89.     Because defendants' conduct was willful, malicious, wanton and reckless and so egregious, plaintiff requests the assessment of punitive damages against defendants in an amount appropriate to punish and make an example of defendants, and in excess of $6,000,000.00.

## SECOND COUNT
### (Breach of Contract)

90.   Plaintiff repeats and reiterates each and every allegation as set forth above as if fully set forth at length herein.

91.   Defendant DDL, following its wrongful termination of plaintiff, remains liable and indebted to plaintiff for compensation due and owing under the Employment Agreement, the complete amount of which will be proved at trial.

## THIRD COUNT
### (Breach of Contract – Implied Covenants)

92.   Plaintiff repeats and reiterates each and every allegation as set forth above as if fully set forth at length herein.

93.   Plaintiff's Employment Agreement by DDL included the mutual obligations to comply with all applicable industry standards of patient care and professionalism, including, without limitation, laws governing patient privacy, workplace safety and professional ethics.

94.   DDL breached its professional obligations, and its Employment Agreement with Plaintiff, by disciplining and wrongfully terminating Plaintiff's employment as a result of and in reaction to Plaintiff having engaged in activities required of him by professional ethics and his professional responsibility.

95.   As a direct, foreseeable, and proximate result of defendants' wrongful termination of Plaintiff, Plaintiff has lost, and will continue to lose wages and benefits that he would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby in an amount in excess of $700,000.00 the precise amount of which will be proved at trial.

96.     In addition, DDL's adverse employment actions against Plaintiff were carried out by managerial employees deliberately and maliciously with the intent to oppress, and damage plaintiff, and defendants' conduct was willful, malicious, wanton and aggravated.

## FOURTH COUNT
### (Tortious Interference with Contract)

97.     Plaintiff repeats and reiterates each and every allegation as set forth above as if fully set forth at length herein.

98.     Defendants DD Management, Mr. Hussain, Wolle and Stathakis' actions tortiously interfered with Dr. Dermesropian's Employment Agreement with DDL.

99.     As a direct, foreseeable, and proximate result of defendants' wrongful termination of Plaintiff, Plaintiff has lost, and will continue to lose wages and benefits that he would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby in an amount in excess of $700,000.00, the precise amount of which will be proved at trial.

100.    By reason of the foregoing, plaintiff prays that the Court assess exemplary and/or punitive damages against defendants, in an amount appropriate to punish defendants and deter such conduct by defendants and others in the future, in excess of $6,000,000.00.

## FIFTH COUNT
### (R.I.C.O. Claim against Dr. Hussain, Mr. Hussain, Mr. Wolle and Mr. Stathakis pursuant to 18 U.S.C. § 1964(c))

101.    Plaintiff repeats and reiterates each and every allegation as set forth above as if fully set forth at length herein.

102.    Defendants acted unlawfully in violation of 18 U.S.C. § 1964 (c).

103.    Plaintiff sustained economic injury as a result of the foregoing.

104.    Defendants Dr. Hussain, Mr. Hussain, Mr. Wolle and Mr. Stathakis each

aided, abetted, counseled, commanded, induced or procured the commission of the violations of the RICO Statutes as well as the Mail Statute, and therefore are each liable as principals pursuant to 18 U.S.C. § 1964 (c).

105. As a direct, foreseeable, and proximate result of defendants' wrongful activities, Plaintiff was wrongfully terminated, has lost, and will continue to lose wages and benefits that he would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages as a result of the breach of his Employment Agreement, in the amount of $700,000.00, on which Plaintiff is entitled to recover threefold the damages in the amount of $2,100.000.00 , which Plaintiff incurred as a result of the aforesaid racketeering activity, together with attorneys' fees and costs of this action;

## SIXTH COUNT
### (Conspiracy claim against Dr. Hussain, Mr. Hussain, Mr. Wolle and Mr. Stathakis pursuant to 18 U.S.C. § 1962(d))

106. Plaintiff repeats and reiterates each and every allegation as set forth above as if fully set forth at length herein.

107. In committing the aforementioned unlawful activities, Defendants Dr. Hussain, Mr. Hussain, Mr. Wolle and Mr. Stathakis conspired together against the Plaintiff in a pattern of racketeering activity in violation of 18 U.S.C. § 1962 (d).

108. As a direct, foreseeable, and proximate result of defendants' wrongful activities, Plaintiff was wrongfully terminated, has lost, and will continue to lose wages and benefits that he would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages as a result of the breach of his one year Employment Agreement, in the amount of $700,000.00, on which Plaintiff is entitled to recover threefold

the damages in the amount of $2,100.000.00, that Plaintiff incurred as a result of the aforesaid racketeering activity, together with attorneys' fees and costs of this action;

## SEVENTH COUNT
### (R.I.C.O. Claim against all defendants pursuant to 18 U.S.C. § 1964 (c))

109.   Plaintiff repeats and reiterates each and every allegation as set forth above as if fully set forth at length herein.

110.   Defendants acted unlawfully in violation of 18 U.S.C. § 1964 (c).

111.   Plaintiff sustained economic injury as a result of the foregoing.

112.   Defendants each aided, abetted, counseled, commanded, induced or procured the commission of the violations of the RICO Statutes, the Mail Statute 18 U.S.C. § 1341 as well as the engaging in monetary transactions in property derived from specified unlawful activities pursuant to 18 U.S.C. § 1957, and therefore are each liable as principals pursuant to 18 U.S.C. § 1964 (c).

113.   As a direct, foreseeable, and proximate result of defendants' wrongful activities, Plaintiff was wrongfully terminated, has lost, and will continue to lose wages and benefits that he would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages as a result of the breach of his one year Employment Agreement, in the amount of $700,000.00, on which Plaintiff is entitled to recover threefold the damages in the amount of $2,100.000.00 that Plaintiff incurred as a result of the aforesaid racketeering activity, together with attorneys' fees and costs of this action;

## EIGHT COUNT
### (Conspiracy Claim against all defendants pursuant to 18 U.S.C. § 1962(d))

114.   Plaintiff repeats and reiterates each and every allegation as set forth above as if fully set forth at length herein.

115.   In committing the aforementioned unlawful activities, Defendants conspired together against the Plaintiff in a pattern of racketeering activity in violation of 18 U.S.C. § 1962 (d).

116.   As a direct, foreseeable, and proximate result of defendants' wrongful activities, Plaintiff was wrongfully terminated, has lost, and will continue to lose wages and benefits that he would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages as a result of the breach of his Employment Agreement in the amount of $700,000.00, on which Plaintiff is entitled to recover threefold the damages in the amount of $2,100.000.00 that Plaintiff incurred as a result of the aforesaid racketeering activity, together with attorneys' fees and costs of this action;

## NINTH COUNT

### (Health Care Fraud against all Defendants)

117.   Plaintiff repeats and reiterates each and every allegation as set forth above as if fully set forth at length herein.

118.   As described above, Defendants knowingly and willfully executed multiple schemes to defraud health care benefit programs.

119.   Defendants acted unlawfully in violation of 18 U.S.C. § 1347.

120.   Plaintiff sustained economic injury as a result of these unlawful activities.

121.   As a direct, foreseeable, and proximate result of defendants' fraudulent activities, Plaintiff was wrongfully terminated, has lost, and will continue to lose wages and benefits that he would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby in an amount in excess of $700,000.00, the precise amount of which will be proved at trial.

122.   In addition, Defendants' adverse employment actions against Plaintiff were carried out by managerial employees deliberately and maliciously with the intent to oppress, and damage plaintiff, and defendants' conduct was willful, malicious, wanton and aggravated.

123.   By reason of the foregoing, plaintiff prays that the Court assess exemplary and/or punitive damages against defendants, in an amount appropriate to punish defendants and deter such conduct by defendants and others in the future, in excess of $6,000,000.00.

WHEREFORE, Plaintiff Patrick Dermesropian, D.D.S, prays that judgment be entered against defendants as follows:

a. On the First Count (Retaliation in Violation of 740 ILCS 174/1 *et seq.*), against all defendants, in not less than the sum of Seven Hundred Thousand Dollars ($700,000.00), the complete amount to be determined at trial, plus attorney's fees, costs and disbursements of this action, with punitive damages in an amount of at least Six Million Dollars ($6,000,000.00), in an exact amount to be determined at trial;

b. On the Second Count, against defendant Dental Dreams, LLC, for compensation due and owing under the Employment Agreement, the complete amount of which will be proved at trial;

c. On the Third Count, against all defendants for Breach of Contract's Implied Covenants, in not less than the sum of Seven Hundred Thousand Dollars ($700,000.00), the complete amount to be determined at trial:

d. On the Fourth Count, against all defendants for tortious interference with contract, in not less than the sum of Seven Hundred Thousand Dollars ($700,000.00), the

complete amount to be determined at trial, with punitive damages in an amount of at least Six Million Dollars ($6,000,000.00) in an exact amount to be determined at trial;

e. On the Fifth Count against Defendants Dr. Hussain, Mr. Hussain, Mr. Wolle and Mr. Stathakis for violation of the RICO Statutes in not less than the sum of Two Millions One Hundred Thousand Dollars ($2,100,000.00) treble the amount of damages incurred by the Plaintiff as a result of the aforesaid racketeering activity, together with attorneys' fees and costs of this action;

f. On the Sixth Count, against Defendants Dr. Hussain, Mr. Hussain, Mr. Wolle and Mr. Stathakis for conspiracy to violate RICO Statutes in not less than the sum of Two Millions One Hundred Thousand Dollars ($2,100,000.00) treble the amount of damages incurred by the Plaintiff as a result of the aforesaid racketeering activity, together with attorneys' fees and costs of this action;

g. On the Seventh Count against all Defendants for violation of the RICO Statutes in not less than the sum of Two Millions One Hundred Thousand Dollars ($2,100,000.00) treble the amount of damages incurred by the Plaintiff as a result of the aforesaid racketeering activity, together with attorneys' fees and costs of this action;

h. On the Eight Count against all for conspiracy to violate RICO Statutes in not less than the sum of Two Millions One Hundred Thousand Dollars ($2,100,000.00) treble the amount of damages incurred by the Plaintiff as a result of the aforesaid racketeering activity, together with attorneys' fees and costs of this action;

i. On the Ninth Count against all defendants for Health Care Fraud, in not less than the sum of Seven Hundred Thousand Dollars ($700,000.00), the complete amount to

be determined at trial, with punitive damages in an amount of at least Six Million Dollars ($6,000,000.00) in an exact amount to be determined at trial;

together with interest on all Claims for Relief from October 7, 2008 and the costs and disbursements of this action, with such other, further and different relief as the Court may deem just.                    PLAINITFF DEMANDS TRIAL BY JURY

## VERIFICATION

I, Patrick Dermesropian, D.D.S., hereby verify, under the pains and penalties of perjury, that I have read, in its entirety, the Verified Complaint, and hereby state that the allegations contained therein are true and are based upon personal knowledge and belief.

PATRICK DERMESROPIAN, D.D.S.

Respectfully submitted,
The Plaintiff,
Patrick Dermesropian, D.D.S.
By his Attorney,

PAUL H. ROTHSCHILD, ESQ.
BACON WILSON, P.C.
33 State Street
Springfield, MA 01103
Ph: (413) 781-0560
Fax: (413) 739-7740
BBO# 431100
May 28, 2009

669713