UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PATRICK DERMESROPIAN, D.D.S., | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-30087-MAP |
| | ) | |
| | ) | |
| DENTAL EXPERTS, LLC d/b/a | ) | |
| DENTAL DREAMS, LLC; | ) | |
| DENTAL DREAMS, LLC; FIELD OF | ) | |
| DREAMS DENTAL MANAGEMENT, | ) | |
| LLC; SAMEERA HUSSAIN, D.D.S; | ) | |
| KHURRAM HUSSAIN; PETER | ) | |
| STATHAKIS; and DAVID WOLLE, | ) | |
| Defendants | ) | |

REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANTS' MOTION TO DISMISS (Doc. No. 26)
May 12, 2010

NEIMAN, M.J.

In a lengthy, ten-count complaint (spanning over 200 paragraphs), Patrick

Dermesropian, D.D.S. ("Plaintiff") -- a Connecticut dentist who practiced in both Illinois

and Massachusetts -- contends that certain individuals and entities -- Dental Experts,

LLC d/b/a Dental Dreams, LLC (hereinafter "Dental Dreams Illinois"); Dental Dreams

LLC (hereinafter "Dental Dreams Massachusetts"); Field of Dreams Dental

Management, LLC (hereinafter "Dental Dreams Management"); Sameera Hussain,

D.D.S. ("Dr. S. Hussain"); Khurram Hussain ("K. Hussain"); Peter Stathakis

("Stathakis"); and David Wolle ("Wolle") (together "Defendants") -- unlawfully fired him

because he reported legal and ethical violations.

In particular, Plaintiff alleges that his termination violated Massachusetts' health-care whistleblower statute, Mass. Gen. L. ch. 149, § 187 (Count I) and a similar Illinois law, 740 Ill. Comp. Stat. § 174/1 *et seq.* (Count II); constituted retaliatory discharge (Count III); and breached his employment contract (Count IV) as well as the implied covenants of good faith and fair dealing contained therein (Count V).  Plaintiff also alleges that some or all Defendants tortiously interfered with his contract or contractual relations (Counts VI through VIII); violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Count IX); and engaged in a RICO conspiracy in violation of 18 U.S.C. § 1962(d) (Count X).

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all ten counts for failing to state claims upon which relief may be granted.  For the reasons described below, the court will recommend that the motion be allowed with regard to the tortious interference claims targeting Dental Dreams Illinois and Dental Dreams Massachusetts (Counts VI and VII) as well as the RICO claims (Counts IX and X).  As for the other six counts, however, the court will recommend that Defendants' motion be denied.

## I. STANDARD OF REVIEW

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992).  The Supreme Court has held, however, that only a complaint that "state[s] a claim to relief that is plausible on its

face" will survive a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## II.  BACKGROUND

For present purposes, the following background comes directly from Plaintiff's

First Amended Verified Complaint and Demand for Jury Trial (cited as "Compl.").  The

facts and all reasonable inferences are stated in a light most favorable to Plaintiff, the

party opposing dismissal.  *Young v. Lepone*, 305 F.3d 1, 8 (1st Cir. 2002).

Plaintiff was hired by Defendants in Illinois on August 1, 2007.  (Compl. ¶ 31.)

He continued to work in Illinois until the summer of 2008 when he transferred to

Springfield, Massachusetts.  (Compl. ¶¶ 33-34, 51-53.)  Just before transferring,

Plaintiff entered into an "Independent Contractor Agreement" (hereinafter, "Contract").

(Compl. ¶ 51.)  The Contract provided that commencing on September 1, 2008, Plaintiff

would provide "general dentist services to [Dental Dreams] patients . . . at the

Massachusetts [Dental Dreams] clinic in Springfield."  (Compl. ¶ 53.)  The Contract also

provided that the "initial term of this Contract . . . shall continue for a period of one (1)

year . . . unless sooner terminated by [Dental Dreams] pursuant to section 8 below."

(Compl. ¶ 54.)

Section eight of the Contract, titled "Termination," specified a number of

conditions under which it could be terminated within the first year, including:  (1) by

either party, "for any reason upon one hundred twenty . . . days prior written notice"; (2)

"[b]y written agreement of both parties"; or (3) "[i]f [Plaintiff] has breached the terms of [the Contract]. " (Compl. ¶ 54.)  Section eight also contained other provisions relating to violation of regulations or a failure to perform diligently.  (*Id.*)

The Contract also provided that it would automatically renew each year for an additional one-year term unless either party provided one hundred twenty days written notice to the other party of his or its intent not to renew.  (Compl. ¶ 54.)  Finally, the Contract indicated that it was to be construed according to Illinois law.  (*Id.*)

Plaintiff alleges in the Complaint that, in 2007, while working in Illinois, he observed another dentist falsifying procedure dates (essentially stating that procedures done in 2007 were performed in 2008) in order to facilitate reimbursement by the patient's insurance carrier.  (Compl. ¶¶ 36-37.)  Although Plaintiff reported the perceived misconduct to Dental Dreams Management and Wolle, no discipline was undertaken.  (Compl. ¶¶ 39-44.)  Plaintiff also reported this same dentist for "bribing" a receptionist to assign him the most desirable patients.  (Compl. ¶¶ 48-49.)  In response, Wolle instructed Plaintiff to ignore that misconduct too.  (Compl. ¶ 50.)

Plaintiff also alleges that, while working in Springfield, he observed many more "improper practices," including the following:

> a.  [Dental Dreams] Management personnel – particularly Messrs. K. Hussain, Wolle and Stathakis [(hereinafter, "the managers")] – interfered with and dictated the course of patients' treatments, notwithstanding [the fact that] none of these individuals were trained or licensed to practice dentistry;
>
> b.  [Dental Dreams] Management personnel – particularly [the managers] – urged and directed [Dental Dreams

4

Massachusetts] dentists, including [Plaintiff], to be "more aggressive" in patients' treatment plans, resulting in patients being subjected to dental procedures that were not medically necessary or advisable;

c.  [Defendants] engag[ed] in questionably false and fraudulent billing practices, such as "pre-billing" for dental prosthetics (*i.e.*, billing out for dentures, crowns and bridges at the "impression" stage, and NOT on delivery thereof to the patient), when seeking reimbursement from Medicaid and private insurance providers;

. . . .

h.  [Defendants] provid[ed] at least one dentist – [a] Dr. Azad – access to and use of another dentist's – Dr. S. Hussain's – Drug Enforcement Administration (DEA) registration number, notwithstanding (or because) the former had not yet received his own DEA registration number, nor did he work at the Springfield Clinic;

i.  [Defendants] knowingly permitt[ed] staff members of the Springfield Clinic to enter eating facilities with infected lab coats which were then disposed of in kitchen garbage cans, thereby subjecting all other employees, their families, and the dental clinic's patients to a risk of contracting infectious diseases; and

j.  [Defendants] fail[ed] to maintain and protect patient-privacy and confidentiality as required by the Health Insurance Portability and Accountability Act of 1996 (HIPAA)
. . . .

(Compl. ¶ 60(a)-(c), (h)-(j).)  Furthermore, Plaintiff alleges that Defendants threatened

to discharge dentists who refused to comply with directives by the managers, even after

a refusing dentist voiced his concerns regarding improprieties.  (Compl. ¶ 68(d).)

Plaintiff also asserts that Defendants told him to be "more aggressive" in his treatment

plans, but that he refused to do so because he felt that they were pushing unethical

behavior.  (Compl. ¶¶ 71, 72.)

In September and October of 2008, Plaintiff reported a number of his concerns to the managers and Dr. S. Hussain.  (Compl. ¶ 76.)  The managers, however, advised Plaintiff that, in order to preserve his employment, he should "simply follow instructions."  (Compl. ¶ 77.)  Thereafter, when Plaintiff inquired about having received a payment for a service not yet provided, he was again told not to interfere.  (Compl. ¶¶ 79, 80.)

Plaintiff also claims that he was not paid for all of his services because of Defendants' repeated failure to attempt to collect outstanding patient balances in good faith.  (Compl. ¶¶ 137-38.)  He also describes incidents where payments for his services were below the contract rate because the patient had reached the insurance limit for the year or because the patient's insurance had been exhausted by "unnecessary treatment."  (Compl. ¶¶ 66, 67.)  Plaintiff also describes Defendants' billing practices as being structured in such a way that the Internal Revenue Service ("IRS") believed that money retained by Defendants was actually being paid to dentists, including Plaintiff.  (Compl. ¶ 95.)  As a result, Plaintiff claims he was subjected to an IRS audit which resulted in a loss of compensation, emotional harm, and other damages.  (Compl. ¶ 96.)  In any event, on October 7, 2008, five weeks after Plaintiff began working in Massachusetts, Defendants terminated his employment without notice.  (Compl. ¶ 87.)

III. DISCUSSION

As indicated, Plaintiff alleges that his termination breached the express and

6

implied terms of the Contract, implicated a number of torts, and triggered statutory remedies under Illinois, Massachusetts, and federal law.  Addressing the causes of action essentially in the order they appear in the complaint, the court will recommend that Defendants' motion to dismiss be allowed with respect to two of the tortious interference claims (Counts VI and VII) as well as the RICO claims (Counts IX and X) but that the motion be denied with respect to the other causes of action.

A.  <u>Massachusetts' Health-Care Whistleblower Statute (Count I)</u>

Defendants first argue that Plaintiff's claim under Massachusetts' health-care whistleblower statute, Mass. Gen. Laws ch. 149, § 187 (Count I), cannot be based on alleged instances of financial fraud (see, *e.g.*, Compl. ¶¶ 60, 68, 73 and 81) but only on allegations posing a direct risk to public health.[1]  As might be expected, Plaintiff disagrees.  *See*, *e.g.*, *Davis v. Cape Cod Hosp.*, 885 N.E.2d 173, 2008 WL 1820642, at

---

[1]  In pertinent part, the statute provides as follows:

> A health care facility shall not . . . terminate a contractual agreement with or take any retaliatory action against a health care provider because the health care provider . . . (1) discloses or threatens to disclose to a manager or to a public body an activity, policy or practice of the health care facility . . . that the health care provider reasonably believes is in violation of a law or rule or regulation promulgated pursuant to law or violation of professional standards of practice which the health care provider reasonably believes poses a risk to public health . . . .

Mass. Gen. Laws ch. 149, § 187(b).  *See also Commodore v. Genesis Health Ventures, Inc.*, 824 N.E.2d 453, 460 (Mass. App. Ct. 2005) ("The statute is specific to the health care industry and is designed to safeguard patient care by protecting the rights of health care providers who expose deficiencies in care that violate laws or regulations or professional standards that endanger public health.").

*4 (Mass. App. Ct. Apr. 24, 2008) (questioning "whether the meaning of 'public health' extends only to patient care, or more broadly to the integrity of the process of financial reimbursement for that patient care") (citation omitted).  For its part, the court need not enter too far into this fray since the complaint contains multiple allegations which can easily be seen as directly pertaining to public health risks, *e.g.*, assertions of non-medical professionals dictating treatment, claims that unnecessary and expensive treatment was provided to patients, assertions regarding the disposal of unclean garments in the kitchen, and allegations involving the improper use of a DEA authorization number.  (See Compl. ¶ 60.)  Accordingly, the court will recommend that Defendants' motion with respect to Count I be denied.

B.  Illinois Whistleblower Act (Count II)

Defendants next argue that the Illinois Whistleblower Act, 740 Ill. Comp. Stat. § 174/1 *et seq.*, the basis of Count III, does not have an "extraterritorial" effect and, therefore, cannot apply to Plaintiff's employment in Massachusetts which began on September 1, 2008.  *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005) (recognizing "the long-standing rule of construction in Illinois which holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute'") (quoting *Dur-Ite Co. v. Industrial Comm'n*, 68 N.E.2d 717, 722 (Ill. 1946)).  Again, however, the court need not resolve the issue since numerous allegations (*e.g.*, Compl. ¶¶ 36-44) focus solely on Illinois where Plaintiff lived and worked for at least one year prior to his transfer to Massachusetts.  *See also Avery*, 835 N.E.2d at 854.  ("recogniz[ing] that there is no single formula or

8

bright-line test for determining whether a transaction occurs within [Illinois]" and that "each case must be decided on its own facts"). Accordingly, the court will recommend that Defendants' motion with respect to Count II be denied as well.

## C. Breach of Contract (Count IV) and Breach of Implied Covenants (Count V)

Defendants argue that Plaintiff was an "at-will" employee and, hence, cannot sue for breach of contract (Count IV) or breach of the implied contractual covenants of good faith and fair dealing (Count V). *See Berara v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444-45 (7th Cir. 1992) (because an at-will employee under Illinois law can have no reasonable expectation that he will not be terminated, an employer has no responsibility under the covenant of good faith and fair dealing to refrain from firing an *at-will* employee).[2] In the court's view, however, Defendants' argument is not persuasive. Accordingly, the court will recommend that Defendants' motion with respect to Counts IV and V be denied.

As an initial matter, it appears clear from the facts alleged that Plaintiff was *not* an at-will employee since he signed a contract and was subject to its provisions. To be sure, as Defendants argue, Illinois law provides that "[c]ontracts of indefinite duration are terminable at the will of either party." *Jespersen v. 3M Co.*, 700 N.E.2d 1014, 1016 (Ill. 1998) (citing *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 317 (Ill. 1987) ("Nearly all courts agree on the general rule, that an employment relationship without a fixed duration is terminable at will by either party.")). Here, Defendants

---

[2] For Counts IV and V the parties cite only to Illinois law, the governing law chosen in the Contract.

argue, the Contract governing Plaintiff's work in Massachusetts was of "indefinite

duration" and, therefore, the "*Jespersen*" rule vitiates his contract-based causes of

action under Illinois law.

The court, however, disagrees. For one thing, the rule outlined in *Jespersen*

"applies only if *both* the contract's duration and the manner in which the contract can be

terminated are uncertain." *Riverside Mktg., LLC v. SignatureCard, Inc.*, 425 F. Supp.

2d 523, 531 (S.D.N.Y. 2006) (applying Illinois law) (emphasis added). While "perpetual

contracts are disfavored," the *Riverside* court explained, such contracts are not

terminable at-will where an objective event triggers termination, and an event is

objective when it "has the effect of making the contract sufficiently definite in duration."

*Id.* (citations and internal quotation marks omitted). In other words, "[a]n agreement

without a fixed duration but which provides that it is terminable only for cause or upon

the occurrence of a specific event is in one sense of indefinite duration, but is

nonetheless terminable only upon the occurrence of the specified event and *not* at will."

*Jespersen*, 700 N.E.2d at 1016 (emphasis added).

In the instant case, the Contract contains language making it renewable. *See*

*Lake Forest Acad. v. Am. Language Acad.*, 777 F. Supp. 610, 617 (N.D. Ill. 1991)

(holding that renewable contract is "neither terminable at will nor void for having the

possibility of perpetual duration" solely from the renewal clause). However, the

Contract is also terminable upon Plaintiff's material breach or upon one hundred twenty

days notice. *See Bell Enterprises Venture v. Santanna Natural Gas Corp.*, 2001 WL

1609417, at *3 (N.D. Ill. Dec. 12, 2001) (distinguishing *Jesperson* to hold that "a

10

contract of *definite duration*, which also grants the parties an unfettered right to terminate" is not terminable at-will) (emphasis in original).  In short, because the Contract explicitly provides for termination upon the occurrence of specific, objective events, Plaintiff is not an at-will employee as Defendants suggest.  Accordingly, the court will recommend that Defendants' motion with respect to Counts IV and V be denied.

D.  Retaliatory Discharge (Count III)

Assuming that Plaintiff was an at-will employee, Defendants also argue that Plaintiff's retaliatory discharge cause of action (Count III) must be dismissed because he fails to cite "a clearly established public policy" that was offended by his termination. *King v. Driscoll*, 638 N.E.2d 488, 492 (Mass. 1994) ("[W]e have recognized that an at-will employee has a cause of action for wrongful termination only if the termination violates a clearly established public policy.").  Because this court finds no merit in Defendants' at-will argument, however, it will also recommend that Defendants' motion with respect to Count III be denied.  To be sure, this may leave Plaintiff in an odd position since, it appears, certain retaliatory discharge claims are available only to at-will employees.  *See id.  See also Wright v. Shriners Hosp. for Crippled Children*, 589 N.E.2d 1241, 1244 (Mass. 1992).  However, given not only the nascency of these proceedings but the fact that the scope of Plaintiff's retaliation claim is not well articulated, the court believes that the better view is to allow Count III to survive at this time.

E.  Tortious Interference Claims (Counts VI through VIII)

11

The complaint also includes three separate claims alleging tortious interference with contractual relationships:  that Dental Dreams Illinois tortiously interfered with Plaintiff's contractual relationship with Dental Dreams Massachusetts (Count VI); that Dental Dreams Massachusetts tortiously interfered with Plaintiff's contractual relationship with Dental Dreams Illinois (Count VII); and that Dental Dreams Management, along with the managers, tortiously interfered with Plaintiff's contractual relationship with both Dental Dreams Illinois and Dental Dreams Massachusetts (Count VIII).  For the reasons that follow, the court will recommend that the motion to dismiss be allowed as to Counts VI and VIII, but denied as to Count VIII.

Counts VI and VII can be dealt with in short order.  "[T]o prevail on a tortious interference claim, a plaintiff must demonstrate (1) that [he] had a business relationship, (2) that the defendant knew of this relationship, (3) that the defendant intentionally and maliciously interfered with the relationship, and (4) that the defendant's actions harmed [him]."  *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 75-76 (1st Cir. 2001).  An employee, however, may not "sue [his] employer for interfering with its own contract."  *Id.* at 76.  This reasoning has been expanded to bar a tortious interference claim between entities within a partnership.  *See Kunelius v. Town of Stow*, 2008 WL 4372752, at **5-6 (D. Mass. Sep. 23, 2008) (citing cases).

In the instant case, the complaint alleges that Dental Dreams Illinois "owns and operates *all* of the nationwide Dental Dreams clinics through one or more locally-licensed dentists at each one of its locations."  (Compl. ¶ 8 (emphasis added).)  The complaint further asserts that Dental Dreams Illinois "is a provider of dental services

with dental clinics and billing offices in northern Illinois, Texas, *Massachusetts*, Pennsylvania and Connecticut."  (Compl. ¶ 6 (emphasis added)).  The complaint also assumes that Dental Dreams Illinois is responsible for managing Dental Dreams Massachusetts.  Because of this close relationship, Dental Dreams Illinois cannot have tortiously interfered with Plaintiff's contractual relationship with Dental Dreams Massachusetts, or vice versa.  As a result, the court has little choice but to recommend that Defendants' motion with respect to Counts VI and VII be allowed.

Defendants argue that the same rule should be applied to Count VIII -- the tortious interference claim targeting Dental Dreams Management and the managers -- since they "maintained control" over both Dental Dreams Illinois and Dental Dreams Massachusetts.  The court disagrees.

Ordinarily, "a defendant-supervisor is entitled to a qualified privilege in an employment-based tortious interference case."  *Zimmerman*, 262 F.3d at 76.  Within Massachusetts, however, "the privilege is not sacrosanct."  *Id.*  Rather, "proof of actual malice" can show "that a supervisor was not acting on the employer's behalf" and proof of unlawful retaliation "may be used to show malice when a tortious interference claim is brought against a supervisor in a loss-of-employment case."  *Id.* at 76-77.  *See also Draghetti v. Chmielewski*, 626 N.E.2d 862, 869 (Mass. 1994) (holding that evidence that defendant-supervisor's action "was based on retaliation or ill will" was sufficient to show an improper motive).  In this regard, Massachusetts is more plaintiff-friendly than other jurisdictions which require a showing that a "defendant-supervisor acted both with malice and outside the scope of his employment."  *Zimmerman*, 262 F.3d at 76 n.5.

13

Here, Count VIII alleges facts sufficient to state a claim of tortious interference that is plausible on its face.  Specifically, the complaint alleges that the managers -- and by extension Dental Dreams Management -- threatened Plaintiff with termination unless he followed unethical or illegal instructions.  (Compl. ¶ 77.)  From this a factfinder could infer that Plaintiff, in fact, was fired in retaliation for not following such instructions.  And, as mentioned, such retaliation may indicate malice sufficient to a tortious inference cause of action against the managers and, by extension, Dental Dreams Management.  Accordingly, the court will recommend that the motion to dismiss with respect to Count VIII be denied.

F.  RICO Claims (Counts IX and X)

Finally, Defendants argue that Plaintiff has not met his burden of establishing standing, let alone any of the required elements, with regard to the two RICO claims (Counts IX and X).  This court agrees with Defendants' standing argument and, accordingly, will recommend dismissal of Counts IX and X.

To succeed in a civil RICO action, a plaintiff must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (citations omitted).  Moreover, "if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails."  *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000).  Even more fundamentally, however, a plaintiff must demonstrate that he has standing to bring his RICO-based causes of action.  *See Sedima*, 473 U.S. at 496.

According to the Supreme Court, a RICO "plaintiff only has standing if, and can

14

only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id. See also Willis v. Lipton*, 947 F.2d 998, 1000 (1st Cir. 1991) ("A plaintiff enjoys standing under section 1964(c) only if he can demonstrate (1) a violation of section 1962, and (2) harm 'by reason of' the violation." (quoting *Sedima*, 473 U.S. 479, 495-96)); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1053 (N.D. Cal. 2009) (holding, post *Iqbal*, that a plaintiff is required to plead "an ascertainable loss that is in direct relation to the alleged fraudulent conduct."). Also, "[m]ere 'cause in fact' is insufficient to confer RICO standing . . . since section 1964(c) establishes a proximate cause requirement as well." *Willis*, 947 F.2d at 1000. And, "[a]lthough the pleadings should generally be construed liberally, a greater level of specificity [has always been] required in RICO cases." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 443 (1st Cir. 2000) (citing *inter alia*, *Garita Hotel Ltd. Pshp v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 17 n. 1 (1st Cir. 1992)).

Here, Plaintiff alleges several injuries caused by RICO predicate acts, *i.e.*, that (1) he was terminated in violation of RICO, (2) he was denied payment for treating patients whose medical care was capped out by doctors' fraudulent billing practices, (3) Defendants fraudulently attempted to divert their tax burdens to him, resulting in his having to defend himself to the IRS, (4) he was subjected to extortion or attempted extortion, and (5) he suffered emotional damages. In the court's view, however, none of these alleged injuries sufficiently establishes standing for RICO liability.

Plaintiff first alleges that his termination is itself an injury suffered as a direct result of a RICO predicate act. Lost employment, however, may not to give rise to a

15

RICO cause of action when the predicate act itself did not cause the dismissal.  *Willis*,

947 F.2d at 1000-01.  *See also Pujol v. Shearson/American Express, Inc.*, 829 F.2d

1201, 1205 (1st Cir. 1987) (holding that termination meant to prevent employee from

reporting RICO predicate acts did not convey standing under section 1964(c); *Nodine*

*v. Textron, Inc.*, 819 F.2d 347, 349 (1st Cir. 1987) (holding that termination of employee

in retaliation for his reporting RICO predicate acts, while wrong, did not violate RICO).

Second, Plaintiff alleges that, "at least once," he was denied payment for treating

patients whose insurance had been exhausted by other dentists' fraudulent billing

practices.  Whenever "fraud" is alleged, however, "a party must state with particularity

the circumstances constituting fraud."  Fed. R. Civ. P 9(b).  Plaintiff's generic assertions

-- that on an unspecified number of occasions (at least once), during an undisclosed

time period, with unnamed patient(s), he had not received full compensation for his

services causing undisclosed monetary injury -- meet neither the pleading standards of

*Iqbal* nor the heightened pleading requirements of Rule 9(b), at least for RICO

purposes.  *See Bessette*, 230 F.3d at 443.  *See also Overton v. Torruella*, 183 F. Supp.

2d 295, 302 (D. Mass. 2001) ("When RICO violations are alleged, 'particular care is

required to balance the liberality of the Civil Rules with the necessity of preventing

abusive or vexatious treatment of defendants.'") (quoting *Miranda v. Ponce Federal*

*Bank*, 948 F.2d 41, 44 (1st Cir. 1991)).

Third, Plaintiff alleges that Defendants' fraudulent billing practices led to his

being investigated by the IRS, causing him to lose money and time defending himself.

As indicated, however, in order to provide standing for a civil RICO action, the

predicate act must be more than a mere "but for" cause of the injury; it must also be the proximate cause.  *Willis*, 947 F.2d at 1000.  Plaintiff has not made that allegation. Moreover, like his other fraud-based assertion, Plaintiff has neither pled with specificity what billing practice led to his garnering IRS attention nor provided any details pertaining to when this billing practice was in effect, when he was forced to defend himself, and how much time or money was spent on his defense.  *See also Miranda*, 948 F.2d at 44; *Overton*, 183 F. Supp. 2d at 302; Fed. R. Civ. P. 9(b).

Fourth, Plaintiff argues that he has "stated a claim for extortion (or, at least, attempted extortion)," in that he was pressured to give up certain "intangible rights" in order to retain his contractual rights.  Unfortunately for Plaintiff, however, the attempted extortion was not successful because he neither participated in the alleged fraudulent behavior nor ceased to report said fraudulent behavior to management.  (Compl. ¶¶ 83-85.).  As a result, Plaintiff was not forced to give up any of his "intangible rights" and, therefore, could not have been injured by any attempted extortion for RICO purposes. *See Camelio v. American Fed'n*, 137 F.3d 666, 670-71 (1st Cir. 1998) (extortion attempts intending to rob plaintiff of "property rights attendant to his union membership" were not a source of standing under RICO because "[a]s [plaintiff] concedes that these attempts did not succeed, they could not have caused his injuries.").

Fifth and finally, Plaintiff alleges that he was emotionally injured because of predicate acts.  However, "claims for personal injuries, such as emotional distress . . . are not cognizable under RICO."  *Zareas v. Bared-San Martin*, 209 Fed.Appx. 1, 2, 2006 WL 3681659, at *2 (1st Cir. Dec. 15, 2006) (citing *Martin v. Fleet Nat'l Bank*, 676

17

F. Supp. 423, 432 (D.R.I. 1987), and *Van Schaick v. Church of Scientology of Cal., Inc.*, 535 F. Supp. 1125, 1137 (D. Mass. 1982)).  In short, because none of Plaintiff's alleged injuries provide him with RICO standing, the court will recommend that Defendants' motion be allowed with respect to Counts IX and X.

IV. CONCLUSION

For the reasons stated, the court recommends that Defendants' motion to dismiss be ALLOWED with respect to Counts VI, VII, IX and X, but otherwise DENIED.[3]

DATED: May 12, 2010

 /s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[3]  The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.